Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following, which were entered into as
 STIPULATIONS
1. That all the parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and this claim, and this claim is subject to the Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant employer and the plaintiff employee at the time of the alleged injury.
3. That the defendant is an approved self-insured with Constitution State Service Insurance Company serving as it agent.
4. The parties stipulated that plaintiff's average weekly wage was $379.18 with a compensation rate of $252.76.
5. The date of the alleged injury is August 18, 1995.
6. The issue to be determined from this hearing is as follows:
 a) Whether plaintiff sustained an injury by accident or developed an occupational disease arising out of the course and scope of her employment with defendant-employer?
**********
The parties submitted a Pre-Trial Agreement at the hearing before the deputy commissioner. The same along with its attachments and any other stipulations are incorporated herein by reference.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission adopts in part and modifies in part the findings of the deputy commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a female born January 28, 1948 and has a 12th grade education. As of the date of the hearing before the deputy commissioner, plaintiff had worked approximately 7 years for the employer, operating a machine that cut out T-shirts. She worked 36 hours one week and 48 hours the next week. Her work shifts allowed her four twenty-minute breaks per shift.
2. Plaintiff's job required that she thread stacks of cloth into a machine, which then cut out T-shirts. Then she would pick up the stacks of T-shirts, move them and remove the scraps of cloth that remained after the T-shirts had been cut. She was also required to set the spreaders on the machine in which she inserted the fabric. Plaintiff's particular job function was performed several times during the period of an hour and the particular process, which cut 144 shirts, would take 3 to 4 minutes. Plaintiff's job recycled every 5 minutes.
3. Plaintiff began experiencing problems with her arms and back. On or about August 18, 1995, she was operating the cut out machine, cutting sport shirts and experienced pains in her arms and back. For a period of time after that she felt some numbness in her fingers.
4. Plaintiff sought treatment from the company nurse for the problems she experienced with her hands. The nurse advised her to use ice packs and take ibuprofen.
5. On August 29, 1995 plaintiff consulted Dr. Hobart R. Rogers at the Mid-Carolina Orthopaedic Clinic in Rutherfordton. Dr. Rogers noted that the plaintiff had been having intermittent pain in both arms for about a year and that the pain was worse in her left upper extremity. The plaintiff told Dr. Rogers that she had experienced numbness and tingling in her fingers and especially in her left hand, for 6 weeks. She also reported occasional pain in her shoulders and neck. Dr. Rogers performed an examination of the plaintiff and was of the opinion that she had bilateral carpal tunnel syndrome which was worse on the left. Dr. Rogers specifically noted that he did not think the carpal tunnel syndrome was job related and that the exact etiology of the carpal tunnel syndrome was obscure.
6. Dr. Rogers reviewed a video of the plaintiff's job. This is the video that was stipulated as an exhibit. In his note of October 6, 1995, Dr. Rogers opined that the plaintiff had not sustained a compensable injury at Sara Lee Knitting. Dr. Rogers did not see any evidence of repetitive work that would lead to a carpal tunnel type of syndrome nor did he see any type of work that was above the shoulder level or would require an upward gaze on a continuous basis that would lead to any nerve compression of the cervical spine. Dr. Rogers noted that the plaintiff's job had a varied description and was diversified in activity.
7. The plaintiff next consulted with Dr. Guyton Winker on January 9, 1996. Dr. Winker diagnosed probable carpal tunnel syndrome and scheduled nerve conduction studies. Dr. Winker referred plaintiff to Dr. Mary Joan Black of Palmetto Orthopaedics.
8. Dr. Black is an orthopaedic surgeon who examined the plaintiff on February 21, 1996 and made an assessment of moderate carpal tunnel syndrome, left worse than right. Dr. Black placed the plaintiff in a splint that was to be worn at all times, except for bathing. She told the plaintiff that she did not believe any job necessarily causes carpal tunnel syndrome, but job activities could undermine a condition that may have previously been asymptomatic. Dr. Black advised the plaintiff that she might need surgery in the future.
9. Dr. Black continued the care of the plaintiff and performed carpal tunnel release surgery on the plaintiff's left wrist on April 2, 1996. The plaintiff returned to work July 10, 1996. The plaintiff had some additional symptoms and subsequently on September 16, 1997, Dr. Black performed a second surgery on the plaintiff's left wrist. Dr. Black opined in deposition testimony that the plaintiff's shoulder and back problems were not related in any way to conditions or characteristics of the plaintiff's work.
10. Dr. Black gave the opinion that plaintiff's job duties with defendant-employer could, or might have placed plaintiff at an increased risk of developing carpal tunnel syndrome. However, before giving this opinion, Dr. Black stated that it was hard to answer the "increased risk" question without having details about how much strength is involved, how much weight is involved, how much wrist motion is involved and how much finger grasping is involved in plaintiff's job. Of the information needed to render an opinion on this question, Dr. Black was only given the amount of weight involved. No weight is therefore given to Dr. Black's opinion on "increased risk".
11. On the question of whether she had an opinion on whether plaintiff's job was a significant contributing factor in the onset of plaintiff's carpal tunnel syndrome, Dr. Black initially said she could not give an opinion because she did not have enough information on what plaintiff's job description was. When the hypothetical was repeated giving Dr. Black plaintiff's job duties, she opined that plaintiff's job could or might have been a significant contributing factor to the onset of plaintiff's carpal tunnel syndrome. However, during cross examination, Dr. Black stated that she didn't have enough of a clear cut job description to say "yes" or "no" to the question of whether plaintiff's job, more probably than not, caused her carpal tunnel syndrome. Dr. Black testified that if a repetitive job causes the fingers and the wrist to be flexed and extended repetitively, that motion can cause inflammation of the tendon inside the carpal canal and as a result some people get carpal tunnel syndrome. In rendering her opinion on whether plaintiff's job was a significant contributing factor in the onset of her carpal tunnel syndrome, Dr. Black did not have sufficient evidence on whether plaintiff's job required repetitive flexion and extension of plaintiff's fingers and wrists. Therefore, her opinion on this issue is accorded little weight.
12. Dr. Hobart Rogers did not causally relate the plaintiff's carpal tunnel syndrome to her job and expressed the opinion that the job did not place her at an increased risk of contracting carpal tunnel syndrome.
13. During the period of time that the plaintiff was out of work following her surgery on April 2, 1996 and up until July 10, 1996 the employer paid the plaintiff $180.00 per week in short-term disability benefits for which the employer would be entitled to a credit against any compensation due the plaintiff.
14. Based on the greater weight of the evidence, plaintiff's job duties at Sara Lee did not cause or significantly contribute to the development of her carpal tunnel syndrome, bursitis or shoulder condition. The plaintiff's job duties with Sara Lee did not place her at an increased risk of contracting carpal tunnel syndrome, bursitis or a shoulder impingement over the general public not so employed.
15. Plaintiff did not sustain an injury by accident as a result of her employment on or about August 18, 1995.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident on August 18, 1995 arising out of and in the course of her employment with the defendant-employer when she experienced pain in her arms and back while cutting out shirts. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff did not sustain an occupational disease as a result of her employment with Sara Lee. The plaintiff's employment did not place her at an increased risk for contracting an occupational disease over the general public not so employed and her employment was not a significant contributing factor in the development of her carpal tunnel syndrome, bursitis and shoulder condition. The plaintiff has failed to establish her claim by the greater weight of the evidence. N.C. Gen. Stat. § 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ LAURA K. MAVRETIC COMMISSIONER
BSB:md